Case 1:23-cv-10809-AT Document 1-2 Filed 12/12/23 Page 1 of 22

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
----------------------------------------------------------------X
MT. HAWLEY INSURANCE COMPANY,

                Plaintiff,

           - against -

SMITH AND COMPANY, A REAL ESTATE
DEVELOPMENT CORPORATION,

                Defendant.
----------------------------------------------------------------X

Index No.

**COMPLAINT FOR
DECLARATORY RELIEF**

Plaintiff Mt. Hawley Insurance Company ("Mt. Hawley"), by and through its undersigned attorneys, for its complaint against defendant Smith and Company, A Real Estate Development Corporation ("Smith & Co."), alleges as follows:

## INTRODUCTION

1.    Mt. Hawley brings this action pursuant to CPLR §§ 3001 and 3017 for a declaration concerning the rights and the obligations of the parties under a commercial general liability insurance contract (the "Policy") that it entered into with Smith & Co., with respect to claims that have been asserted against Smith & Co. in several underlying lawsuits relating to a construction project on which it has advised it acted as general contractor, including: (1) *Laurel Creek, LP v. Wick's Roofing, Inc., et al.*, Case No. 23CV-0445, pending in California Superior Court, San Luis Obispo County ("*Laurel Creek* Action"); (2) *Winkles Enterprises, Inc. dba New Life Restoration v. Smith and Company, a Real Estate Development Corporation, et al.*, (and related cross-complaint), Case No. 23CV-0360, pending in California Superior Court, San Luis Obispo County ("*Winkles* Action"); and (3) *Consolidated Electrical Distributors, Inc. v. Laurel Creek, LP, et al.* (and related cross-complaint), Case No. 23CV-0393, pending in California Superior Court, San Luis Obispo County ("*Consolidated* Action") (collectively, the "Underlying Actions").

2.    Mt. Hawley is defending Smith & Co. in the Underlying Actions, under a

Case 1:23-cv-10809-AT   Document 1-2   Filed 12/12/23   Page 2 of 22

complete reservation of rights. Mt. Hawley contends that it owes no contractual duty to defend or to indemnify Smith & Co for the claims asserted in the Underlying Actions, under the terms and conditions of the Policy. Without waiver of any other contractual provisions and exclusions, as set forth in more detail below, Mt. Hawley contends that several of the Policy's terms, conditions and exclusions apply to preclude coverage and any potential for coverage for the Underlying Actions. Smith & Co. disputes this contention and contends that the claims against it in the Underlying Actions are covered under the Policy.

3.      Accordingly, Mt. Hawley seeks a judgment declaring that no potential for coverage or actual coverage under the Policy exists for the Underlying Actions, and that Mt. Hawley therefore owes no duty to defend or indemnify Smith & Co. from or against liability it may sustain in that case. Additionally, Mt. Hawley pleads a distinct, common law claim for damages for the recoupment of sums it has expended on the defense of Smith & Co.

## THE PARTIES

4.      Mt. Hawley is a corporation organized and existing under the laws of the State of Illinois, with its principal place of business in Peoria, Illinois. Mt. Hawley is a citizen of Illinois. Mt. Hawley transacts certain insurance business in New York State and maintains an office in this state at 620 8th Ave, New York, New York 10018.

5.      Smith & Co. is a corporation organized and existing under the laws of the State of California, with its principal place of business in Santa Barbara, California. Smith & Co. is a citizen of California.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over the subject matter of this action by virtue of CPLR § 301, as well as other statutory, contractual, procedural and common law bases.

7.      The Policy contains a New York choice of law clause, as well as a forum selection clause selecting New York. Smith & Co. agreed "In the event of any litigation involving any matter arising out of or related to this Policy," that it "shall submit to the jurisdiction of New York state and New York federal courts, and shall comply with all the

2

Case 1:23-cv-10809-AT Document 1-2 Filed 12/12/23 Page 3 of 22

requirements necessary to give such courts jurisdiction."

8.      By virtue of the Policy's forum-selection clause, Smith & Co. has consented to personal jurisdiction and venue in this Court and is subject to personal jurisdiction pursuant to New York General Obligations Law sections 5-1401 and 5-1402.

9.      Venue is also proper under CPLR § 503, based on the location of Mt. Hawley's office within the State and County of New York.

## FACTS

### The *Laurel Creek* Action

10.     On August 4, 2023, Laurel Creek, LP ("Laurel Creek") filed a complaint against Wick's Roofing, Inc. ("Wick's Roofing") and Smith & Co. in the *Laurel Creek* Action for: (1) General Negligence, and (2) Breach of Contract.

11.     A true and correct copy of the Complaint in the *Laurel Creek* Action is attached hereto as **Exhibit A**.

12.     Laurel Creek alleges in its Complaint, *inter alia*, that it had an agreement with Smith & Co., as general contractor to perform a multimillion dollar renovation project at a warehouse building to convert it into a mixed use apartment complex, that "said contract provided for construction work at 1150 Laurel Lane, San Luis Obispo, California 93401" but that Smith & Co. "breached said contract on, before or after September 19, 2022 and December 10, 2022."

13.     The Complaint in the *Laurel Creek* Action further alleges that, as a result of Smith & Co.'s breaches of its obligations under their contract, construction on the building's roof was done "without proper safety measures to protect said building" and "The roof and its building and its contents were not water tight to prevent water damage from rainfall." It is also alleged that defendants "permitted, condoned and authorized faulty, inadequate and ineffective covering and protection of the roof and its building," and "as a direct, proximate and legal result of the wrongful activities of Defendants … plaintiff suffered property damage, loss of profits, consequential damages, loss of rents, diminution in value, delays in construction completion,

3

INDEX NO. 655482/2023
RECEIVED NYSCEF: 11/03/2023

Case 1:23-cv-10809-AT   Document 1-2   Filed 12/12/23   Page 4 of 22

increased construction costs, increased financing costs and reputational harm."

14.     Laurel Creek further alleged that Smith & Co. "breached said contract (Exhibit 1) [sic] by committing the wrongful conduct set forth with particularity hereinabove. Plaintiff contracted for workmanlike construction, safety, quiet enjoyment of the premises and habitability of the premises at the time the contract (Exhibit 1) [sic] was entered into. The Defendants breached the agreement in the many ways described hereinabove. That Plaintiffs have been damaged by Defendants' breach of said contract (Exhibit 1) [sic]. The damages sustained by Plaintiff are set forth hereinabove and incorporated herein by reference."

### The *Winkles* Action

15.     On July 18, 2023, Winkles Enterprises, Inc. dba New Life Restoration ("Winkles") filed a First Amended Complaint ("FAC") against Smith &Co., Laurel Creek, LP ("Laurel Creek"), and Trisura Insurance Company ("Trisura") in the *Winkles* Action.

16.     A true and correct copy of the Winkles FAC is attached hereto as **Exhibit B**.

17.     The Winkles FAC alleges, *inter alia*, that Winkles entered into a contract with Smith & Co. on September 19, 2022, whereby Winkles would "perform mitigation, remediation, and restoration services at the property" and Smith & Co. would "pay New Life for its services on a time and material basis, with normal industry markups." Winkles "completed its obligations under the agreement with Smith and, on or about November 9, 2022, invoiced Smith in the amount of $479,951.79" as the amount allegedly owed, but "Smith has failed to make any payments to New Life, leaving the entire amount unpaid."

18.     Winkles further alleges that "Smith has breached the Agreement by willfully refusing and failing to pay New Like the amount owed to New Life under the Agreement, or any amount, whatsoever." Based on those facts, Winkles asserts causes of action against Smith for Breach of Contract, Account Stated, Quantum Meruit, and violation of the Prompt Payment laws.

19.     Laurel Creek has cross-claimed against Smith & Co. and Wick's Roofing in the *Winkles* Action, alleging causes of action for Indemnification and for Apportionment of Fault.

4

20.     A true and correct copy of the cross-complaint is attached hereto as **Exhibit C.**

### The *Consolidated* Action

21.     On July 19, 2023, Consolidated Electrical Distributors, Inc. ("Consolidated") filed a Complaint against Laurel Creek and Trisura for enforcement of claim on mechanics lien release bond, and enforcement of claim on stop payment notice, seeking payment for materials that it delivered to Laurel Creek, from Laurel Creek and its bonding company, and Laurel Creek thereafter filed a cross-complaint against Smith & Co.

22.     A true and correct copy of the *Consolidated* Complaint is attached hereto as **Exhibit D**.

23.     Consolidated alleges, *inter alia*, that it agreed to sell certain construction materials to Laurel Creek and thereafter furnished such materials "in connection with the Project"; that those materials were "actually used in and about the improvements in connection with the Project"; but Consolidated as not paid for the materials, so it placed mechanics lien and a stop payment notice on file against the Project owner, Laurel Creek. Consolidated then sued Laurel Creek and the bonding company for payment under a mechanics lien release bond, to recover money for the materials it had delivered but not been paid for.

24.     Laurel Creek cross-claimed against Smith & Co. and Wick's Roofing in the *Consolidated* Action, suggesting they are somehow responsible to pay for the materials that Laurel Creek used for its building but did not pay for, or to pay on a mechanics lien bond or a stop payment notice.

25.     A true and correct copy of Laurel Creek's cross-complaint against Smith & Co. is attached hereto as **Exhibit E**.

### The Insurance Contract

26.     Smith and Company, Inc. and Mt. Hawley Insurance Company entered into a written contract of insurance, Policy No. MGL0196024, for the period April 29, 2022 to April 29, 2023, with limits of insurance of $1 million each occurrence, $2 million general aggregate, and $2 million products/completed operations aggregate (the "Policy").

5

27.    A true and correct, certified copy of the Policy is attached hereto as **Exhibit F**.

28.    Within the Insuring Agreement for "Coverage A – Bodily Injury and Property Damage Liability," Mt. Hawley agreed to "pay those sums that the insured becomes legally obligated to pay as damages because of … 'property damage' to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those damages. However, we will have no duty to defend the insured against any 'suit' seeking damages for … 'property damage' to which this insurance does not apply." The insurance applies to "property damage" only if "caused by an 'occurrence'" and if the damage "occurs during the policy period." "Property damage" is a defined term, meaning: "Physical injury to tangible property, including all resulting loss of use of that property" or "Loss of use of tangible property that is not physically injured." "Occurrence" means "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

29.    Exclusion b. to Coverage A bars coverage for "'property damage' for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement."

30.    Exclusion j. to Coverage A bars coverage for "property damage" to:
(1) Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

…

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

31.    Exclusion m. to Coverage A bars coverage for "Property damage" to "impaired property" or property that has not been physically injured, arising out of:

6

Case 1:23-cv-10809-AT   Document 1-2   Filed 12/12/23   Page 7 of 22

1.  A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

2.  A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

32.    Exclusion n. to Coverage A bars coverage for "Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal, or disposal of: … (2) 'Your work'; or (3) 'Impaired property'; if such work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it."

33.    The Policy sets forth numerous conditions to coverage. Certain conditions bearing upon the insured's duties in the event of an occurrence, offense, claim or suit, include:

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**
…

**1.  Duties In The Event Of Occurrence, Offense, Claim Or Suit**

**a.**    You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

(1)  How, when and where the "occurrence" or offense took place;

(2)  The names and addresses of any injured persons and witnesses; and

(3)  The nature and location of any injury or dam- age arising out of the "occurrence" or offense.

**b.**    If a claim is made or "suit" is brought against any insured, you must:

(1)  Immediately record the specifics of the claim or "suit" and the date received; and

(2)  Notify us as soon as practicable of the claim or "suit" as soon as practicable.

7

Case 1:23-cv-10809-AT   Document 1-2   Filed 12/12/23   Page 8 of 22

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

c.      You and any other involved insured must:

(1)  Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

(2)  Authorize us to obtain records and other information;

(3)  Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

(4)  Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

d.      No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

…

34.      The Policy contains an endorsement titled "Contractors Conditions of Coverage," which sets forth certain conditions precedent to coverage for any work where the insured hires a subcontractor:

### CONTRACTORS CONDITIONS OF COVERAGE

We shall have no obligation to defend or indemnify any insured for any "bodily injury", "property damage", or "personal and advertising injury" arising in whole or in part or directly or indirectly from work by a "contractor" regardless of whether the liability alleged against any insured is direct, vicarious, independent, or otherwise, unless each and every one of the following conditions is satisfied:

1.      Certificates of insurance are obtained from each and every "contractor" prior to commencement of such "contractor's" work listing primary commercial general liability coverage with limits equal to or greater than $1,000,000 per occurrence for "bodily injury" and "property damage", $1,000,000 "personal and advertising injury", $2,000,000 general aggregate, and $1,000,000 products-completed operations aggregate. Certificates of insurance must be obtained showing such primary commercial general liability coverage in effect at all times during which the work is performed.

2.      A written agreement is obtained from each and every "contractor" which hold harmless and indemnify each and every insured under this policy against

8

whom the claim is made for all injuries, damages, claims, and suits arising in whole or in part or directly or indirectly from the "contractor's" work (including any work performed by the "contractor's" subcontractors or sub- subcontractors). Such agreement must expressly provide indemnification to the maximum extent permitted by law. Such agreement must be signed by the parties to the agreement prior to the "occurrence" or offense.

3.      The written agreement required in condition 2. above must require that the "contractor" obtain additional insured coverage under the "contractor's" primary commercial general liability policy for each and every insured against whom a claim is made for ongoing and completed operations. Such agreement must be signed by the parties to the agreement prior to the date of the "occurrence" or offense. Such agreement must require limits of additional insured coverage equal to or greater than the limits listed in condition 1. above. Such agreement must state that the additional insured coverage is to be primary and noncontributory.

As used in this endorsement only, "contractor" means any person or entity that any insured hires or contracts with for the performance of any work including but not limited to, construction, renovations, maintenance, service (including, but not limited to, snow removal and landscaping), installation, repairs, or provision of security, regardless of where such work is performed, and regardless of whether such person or entity is described as a "contractor", construction manager, general contractor, subcontractor, vendor, supplier, materialman, service provider, security guard, or by any other term.

In determining the applicability of and compliance with this endorsement with respect to our duty to defend or indemnify any insured, we shall have the right to examine and rely upon information and documents extrinsic to the allegations in any pleading filed in a "suit". If all the terms of this endorsement have not been complied with, we shall have no duty to defend or indemnify any entity or individual that qualifies or may qualify as an insured or additional insured under this policy.

35.     The Policy contains an endorsement broadly excluding coverage for any claim or

suit for injury or damage arising out of a breach of contract or breach of warranty:

### BREACH OF CONTRACT EXCLUSION

This insurance does not apply, nor do we have a duty to defend any claim or "suit" for "bodily injury," "property damage," or "personal and advertising injury" arising directly or indirectly out of the following:

(a) Breach of express or implied contract;

(b) Breach of express or implied warranty;

(c) Fraud or misrepresentation regarding the formation, terms or performance of a contract; or

(d) Libel, slander or defamation arising out of or within the contractual relationship.

36.    The Policy contains an endorsement broadly excluding coverage for any claim or suit that in any way, in whole or in part, arises out of or results from mold:

### MOLD, MILDEW, FUNGUS OR BACTERIA EXCLUSION

In consideration of the premium for which this policy is issued, this insurance does not apply to, and we are not obligated to defend, any loss, demand, claim, cost, expense, "suit," "bodily injury," "property damage," "personal and advertising injury," medical payments, liability or other proceeding that in any way, in whole or in part, arises out of, relates to, or results from mold, mildew, fungus or bacteria.

****

This exclusion applies regardless of whether any other cause, event, material, product or condition, including but not limited to water damage or water intrusion, contributed concurrently or in any sequence to such loss, demand, claim, cost, expense, "suit," "bodily injury," "property damage," "personal and advertising injury," medical payments or liability.

****

37.    The Policy contains an endorsement titled "Amended Conditions Endorsement" providing:

There is no coverage under this policy, this insurance shall not apply, and we shall have no duty to defend or indemnify any insured for any claim or 'suit' alleging … 'property damage' … if, at any time and regardless of intent, you or any other insured provide materially incorrect, false, inaccurate, or incomplete information in the Application for this policy or in connection with any claim or 'suit' submitted for coverage under this policy.

### _Smith & Co.'s Notice of Claim and Mt. Hawley's Response_

38.    On or about September 21, 2022, Smith & Co. notified Mt. Hawley that damage had occurred at the Project, caused by the alleged faulty construction work of Smith & Co. and/or that of its roofing subcontractor, Wick's Roofing.

10

39.     Mt. Hawley promptly undertook to investigate the claim, subject to a full reservation of rights. Mt. Hawley asked Smith & Co. for information and documentation concerning the Project, including the complete, signed copy of the construction contract between Laurel Creek and Smith & Co. under which Smith & Co. had commenced work and was performing the work at the Property. Mt. Hawley also asked Smith & Co. for information and documentation concerning the alleged damages being claimed by Laurel Creek or any other third-party. Mt. Hawley also asked Smith & Co. for its contracts with Wick's Roofing, and all other evidence of its compliance with the Contractors Conditions of Coverage endorsement.

40.     Smith & Co. provided a copy of what it identified to be its subcontract with Wick's Roofing. A true and correct copy of the contract provided is attached hereto as **Exhibit G**.

41.     On or about December 8, 2022, Mt. Hawley, on behalf of Smith & Co., tendered a claim for additional insured coverage for the claim to United Specialty Insurance Company ("USIC"), Wick's commercial general liability insurer.

42.     Thereafter, by letter dated December 16, 2022, USIC, via its third-party claims administrator, issued a response to Mt. Hawley's tender of additional insured coverage on behalf of Smith & Co ("USIC's Coverage Response Letter").  A true and correct copy of USIC's Coverage Response Letter is attached hereto as **Exhibit H**.

43.     USIC's Coverage Response Letter acknowledged that Smith & Co. qualifies as an additional insured under the USIC Policy but that any such additional insured coverage (to the extent not otherwise excluded) is excess to any other insurance available to Smith & Co., including, but not limited to, the Mt. Hawley Policy.

44.     USIC is not providing a defense to Smith & Co. for the claim.

11

45.     To date, over one year later, Smith & Co. has still refused or been unable to provide much of the remainder of the requested information and documentation. Rather, during the claim process Smith & Co. generated and provided to Mt. Hawley what appears to be a questionable, back-dated, partial copy of a contract, misrepresenting it to constitute the contract between Laurel Creek and Smith & Co. Further, Smith & Co. has provided overstated and unsupported damages calculations, including its own employees' time and expenses, and its own "overhead" and "profit" for what is supposedly being presented as a liability claim being asserted against it by third parties.

46.     Smith & Co. has refused to cooperate with Mt. Hawley in the investigation and defense of the matter, under the terms of their CGL insurance contract. Indeed, Mr. Smith, the principal of Smith & Co., is also the principal of the claimant, Laurel Creek, and essentially a beneficial or actual owner of the damaged building. Further, Mt. Hawley is informed and believes and thereon alleges, Mr. Smith and/or his companies failed to procure appropriate first-party coverage to insure his own property against risk of damage during construction, including builders risk coverage and business income, extra expense or other common soft costs coverage. Thus, whether at his direction or with his tacit consent, Smith & Co. and its personnel have essentially colluded with Laurel Creek against Mt. Hawley, in an effort to hinder the ability of Mt. Hawley to properly investigate, defend or limit the claims that Laurel Creek is asserting against Smith & Co. Mr. Smith is attempting to convert this liability policy into a first-party property policy, by having one of his companies sue another of his companies for damages while hindering the defense efforts of the defendant company.

47.     Acting in collusion, the claims of Mr. Smith's companies, Laurel Creek (developer/plaintiff) and Smith & Co. (general contractor/defendant), have become increasingly

grandiose and more exorbitant, to where they bear no relation whatsoever to the modest water leak event that occurred during construction on September 19, 2022. For example, during the claim process, on or about November 10, 2022, Smith & Co. presented a damages claim for payment, itself improper and overstated, for $728,538.57. By August 9, 2023, 10 months later, Laurel Creek was claiming its loss from the same event at the same building was now somehow in excess of $40 million, including $20 million in property damage.

48.     After the *Laurel Creek* Action was filed, Mt. Hawley thereafter accepted the defense tender and agreed to defend Smith & Co. against that lawsuit, under a reservation of rights. Specifically, by letter dated August 31, 2023, Mt. Hawley (a) agreed to defend; (b) reserved all rights; (c) identified defense counsel who would be representing and defending Smith & Co. in the action; (d) asked Smith & Co. and its personnel to cooperate fully in the defense with the assigned defense counsel; and (e) reiterated its request for information from Smith & Co. that Mt. Hawley had been asking for since the beginning of the claim.

49.     Smith & Co. have still refused to cooperate in the defense, work with defense counsel, or to provide the requested information. Recently, they misrepresented and concealed to defense counsel whether Smith & Co. had been formally served with the summons and complaint in the *Laurel Creek* Action. Smith & Co. then further misrepresented and concealed from Mt. Hawley and from defense counsel the fact that Smith & Co. had been served with a request for entry of default, served by Laurel Creek. In doing so, Smith & Co. collusively orchestrated with and permitted the entry of a default against it and in favor of Laurel Creek, on a (putative) $40 million claim, despite the fact that it had a defense counsel assigned by Mt. Hawley to defend it in that case.

50.     The reason for Smith & Co.'s collusion with Laurel Creek is apparent. The two companies are, in essence, owned, managed and controlled by the same person, Patrick Smith. Properly analyzed, Laurel Creek's claim against Smith & Co. is both modest in amount and uncovered under Smith & Co.'s CGL insurance policy.

51.     After the *Winkles* Action and Cross-Claim were filed, Mt. Hawley thereafter accepted the defense tender and agreed to defend Smith & Co. against that lawsuit, under a reservation of rights. Specifically, by letter dated October 5, 2023, Mt. Hawley (a) agreed to defend; (b) reserved all rights; (c) identified defense counsel who would be representing and defending Smith & Co. in the action; (d) asked Smith & Co. and its personnel to cooperate fully in the defense with the assigned defense counsel; and (e) reiterated its request for information from Smith & Co. that Mt. Hawley had been asking for since the beginning of the claim.

52.     After the *Consolidated* Action and Cross-Claim were filed, Mt. Hawley thereafter accepted the defense tender and agreed to defend Smith & Co. against that lawsuit, under a reservation of rights. Because the action was just tendered, Mt. Hawley has not yet issued a formal reservation of rights letter, but shall do so advising Smith & Co. that Mt. Hawley has (a) agreed to defend; (b) reserved all rights; (c) identified defense counsel who would be representing and defending Smith & Co. in the action; (d) asked Smith & Co. and its personnel to cooperate fully in the defense with the assigned defense counsel; and (e) reiterated its request for information from Smith & Co. that Mt. Hawley had been asking for since the beginning of the claim.

53.     Notwithstanding Mt. Hawley's defense of Smith & Co. in the Underlying Actions, those actions are, in fact, not covered or potentially covered under the Policy. Specifically, and without limitation:

14

a.  Faulty construction work by the general contractor damaging the very project he is working on is not an "occurrence" causing "property damage" under the CGL policy and settled New York law, even if the work was performed by a subcontractor;

b. The Breach of Contract Exclusion endorsement bars coverage;

c.  Smith & Co.'s noncompliance with the Contractors Conditions of Coverage bars coverage;

d. The business risk exclusions, individually and collectively, operate to bar or limit coverage, including exclusions b (contractual liability), j(1) (own property), j(5) & j(6) (work in progress), m (impaired property), n (repair or replacement of your work);

e.  The Mold, Mildew, Fungus or Bacteria Exclusion bars coverage;

f.  The "Amended Conditions Endorsement" bars coverage, in that Smith & Co. has provided materially incorrect, false, inaccurate or incomplete information in connection with the claim and the suit submitted for coverage under this policy;

g.  Smith & Co.'s non-compliance with post-loss conditions, including its duty to provide documents and information, its duty to immediately forward suit papers, and its failure to cooperate with Mt. Hawley and with defense counsel in the investigation and defense of the matter, have prejudiced Mt. Hawley and voids coverage.

54.    In light of the foregoing, Mt. Hawley contends that it has no duty to defend or indemnify Smith & Co. for the Underlying Actions. Smith & Co. disagrees and disputes the

15

contention. Thus, there exists a present, justiciable controversy, regarding the parties' rights and obligations under the Policy and applicable law, warranting declaratory relief.

## FIRST CLAIM FOR RELIEF
### (DECLARATORY JUDGMENT: NO DUTY TO DEFEND *LAUREL CREEK* ACTION)

55.     Mt. Hawley reiterates and incorporates Paragraphs 1 through 54, above, as though fully set forth herein.

56.     Within the Insuring Agreement to Coverage A – Bodily Injury and Property Damage Liability, Mt. Hawley has "the right and duty to defend the insured against any 'suit' seeking" damages because of property damage to which the insurance applies. "However, we will have no duty to defend the insured against any 'suit' seeking damages for … 'property damage' to which this insurance does not apply."

57.     For each of the reasons identified above and summarized at paragraph no. 47, above, there is no potential for coverage for the claims in the *Laurel Creek* Action, the claims are not within the Insuring Agreement, they are excluded, and/or Smith & Co. has voided coverage by its breach of policy conditions, including conditions precedent to coverage, post-loss conditions, and the "Amended Conditions Endorsement."

58.     Mt. Hawley contends that by virtue of the foregoing, it has no duty to defend Smith & Co. against the *Laurel Creek* Action. Smith & Co. disagrees and disputes that contention.

59.     There exists a present, justiciable controversy between the parties concerning whether Mt. Hawley owes a duty to defend Smith & Co. against the *Laurel Creek* Action.

60.     Mt. Hawley seeks, and is entitled to, a Declaratory Judgment that it owes no duty to defend Smith & Co. against the *Laurel Creek* Action.

## SECOND CLAIM FOR RELIEF
### (DECLARATORY JUDGMENT: NO DUTY TO INDEMNIFY *LAUREL CREEK* ACTION)

61.     Mt. Hawley reiterates and incorporates Paragraphs 1 through 60, above, as though fully set forth herein.

16

62.     Within the Insuring Agreement to Coverage A – Bodily Injury and Property Damage Liability, Mt. Hawley has agreed to "pay those sums that the insured becomes legally obligated to pay as damages because of … 'property damage' to which this insurance applies."

63.     For each of the reasons identified above and summarized at paragraph no. 42, above, there is no actual coverage for some or all of the claims and damages asserted in the *Laurel Creek* Action, the claims are not within the Insuring Agreement, they are excluded, and/or Smith & Co. has voided coverage by its breach of policy conditions, including conditions precedent to coverage, post-loss conditions, and the "Amended Conditions Endorsement."

64.     Mt. Hawley contends that by virtue of the foregoing, it has no duty to indemnify Smith & Co. for the *Laurel Creek* Action. Smith & Co. disagrees and disputes that contention.

65.     There exists a present, justiciable controversy between the parties concerning whether Mt. Hawley owes a duty to indemnify Smith & Co. for the *Laurel Creek* Action.

66.     Mt. Hawley seeks, and is entitled to, a Declaratory Judgment that it owes no duty to indemnify Smith & Co. for the *Laurel Creek* Action.

### THIRD CLAIM FOR RELIEF
### (DECLARATORY JUDGMENT: NO DUTY TO DEFEND *WINKLES* ACTION)

67.     Mt. Hawley reiterates and incorporates Paragraphs 1 through 66, above, as though fully set forth herein.

68.     Within the Insuring Agreement to Coverage A – Bodily Injury and Property Damage Liability, Mt. Hawley has "the right and duty to defend the insured against any 'suit' seeking" damages because of property damage to which the insurance applies. "However, we will have no duty to defend the insured against any 'suit' seeking damages for … 'property damage' to which this insurance does not apply."

69.     For each of the reasons identified above and summarized at paragraph no. 47, above, there is no potential for coverage for the claims in the *Winkles* Action, the claims are not within the Insuring Agreement, they are excluded, and/or Smith & Co. has voided coverage by its breach of policy conditions, including conditions precedent to coverage, post-loss conditions,

17

and the "Amended Conditions Endorsement."

70. Mt. Hawley contends that by virtue of the foregoing, it has no duty to defend Smith & Co. against the *Winkles* Action. Smith & Co. disagrees and disputes that contention.

71. There exists a present, justiciable controversy between the parties concerning whether Mt. Hawley owes a duty to defend Smith & Co. against the *Winkles* Action.

72. Mt. Hawley seeks, and is entitled to, a Declaratory Judgment that it owes no duty to defend Smith & Co. against the *Winkles* Action.

**FOURTH CLAIM FOR RELIEF**
**(DECLARATORY JUDGMENT: NO DUTY TO INDEMNIFY *WINKLES* ACTION)**

73. Mt. Hawley reiterates and incorporates Paragraphs 1 through 72, above, as though fully set forth herein.

74. Within the Insuring Agreement to Coverage A – Bodily Injury and Property Damage Liability, Mt. Hawley has agreed to "pay those sums that the insured becomes legally obligated to pay as damages because of … 'property damage' to which this insurance applies."

75. For each of the reasons identified above and summarized at paragraph no. 42, above, there is no actual coverage for some or all of the claims and damages asserted in the *Winkles* Action, the claims are not within the Insuring Agreement, they are excluded, and/or Smith & Co. has voided coverage by its breach of policy conditions, including conditions precedent to coverage, post-loss conditions, and the "Amended Conditions Endorsement."

76. Mt. Hawley contends that by virtue of the foregoing, it has no duty to indemnify Smith & Co. for the *Winkles* Action. Smith & Co. disagrees and disputes that contention.

77. There exists a present, justiciable controversy between the parties concerning whether Mt. Hawley owes a duty to indemnify Smith & Co. for the *Winkles* Action.

78. Mt. Hawley seeks, and is entitled to, a Declaratory Judgment that it owes no duty to indemnify Smith & Co. for the *Winkles* Action.

18

## FIFTH CLAIM FOR RELIEF
### (DECLARATORY JUDGMENT: NO DUTY TO DEFEND *CONSOLIDATED* ACTION)

79.     Mt. Hawley reiterates and incorporates Paragraphs 1 through 78, above, as though fully set forth herein.

80.     Within the Insuring Agreement to Coverage A – Bodily Injury and Property Damage Liability, Mt. Hawley has "the right and duty to defend the insured against any 'suit' seeking" damages because of property damage to which the insurance applies. "However, we will have no duty to defend the insured against any 'suit' seeking damages for … 'property damage' to which this insurance does not apply."

81.     For each of the reasons identified above and summarized at paragraph no. 47, above, there is no potential for coverage for the claims in the *Consolidated* Action, the claims are not within the Insuring Agreement, they are excluded, and/or Smith & Co. has voided coverage by its breach of policy conditions, including conditions precedent to coverage, post-loss conditions, and the "Amended Conditions Endorsement."

82.     Mt. Hawley contends that by virtue of the foregoing, it has no duty to defend Smith & Co. against the *Consolidated* Action. Smith & Co. disagrees and disputes that contention.

83.     There exists a present, justiciable controversy between the parties concerning whether Mt. Hawley owes a duty to defend Smith & Co. against the *Consolidated* Action.

84.     Mt. Hawley seeks, and is entitled to, a Declaratory Judgment that it owes no duty to defend Smith & Co. against the *Consolidated* Action.

## SIXTH CLAIM FOR RELIEF
### (DECLARATORY JUDGMENT: NO DUTY TO INDEMNIFY *CONSOLIDATED* ACTION)

85.     Mt. Hawley reiterates and incorporates Paragraphs 1 through 84, above, as though fully set forth herein.

86.     Within the Insuring Agreement to Coverage A – Bodily Injury and Property Damage Liability, Mt. Hawley has agreed to "pay those sums that the insured becomes legally

19

obligated to pay as damages because of … 'property damage' to which this insurance applies."

87.     For each of the reasons identified above and summarized at paragraph no. 42, above, there is no actual coverage for some or all of the claims and damages asserted in the *Consolidated* Action, the claims are not within the Insuring Agreement, they are excluded, and/or Smith & Co. has voided coverage by its breach of policy conditions, including conditions precedent to coverage, post-loss conditions, and the "Amended Conditions Endorsement."

88.     Mt. Hawley contends that by virtue of the foregoing, it has no duty to indemnify Smith & Co. for the *Consolidated* Action. Smith & Co. disagrees and disputes that contention.

89.     There exists a present, justiciable controversy between the parties concerning whether Mt. Hawley owes a duty to indemnify Smith & Co. for the *Consolidated* Action.

90.     Mt. Hawley seeks, and is entitled to, a Declaratory Judgment that it owes no duty to indemnify Smith & Co. for the *Consolidated* Action.

**SEVENTH CLAIM FOR RELIEF**
**(COMMON LAW DAMAGES CLAIM; RECOUPMENT)**

91.     Mt. Hawley reiterates and incorporates Paragraphs 1 through 90, above, as though fully set forth herein.

92.     The Mt. Hawley Policy explicitly provides that Mt. Hawley "will have no duty to defend the insured against any 'suit' seeking damages for … 'property damage' to which this insurance does not apply."

93.     The insurance does not apply to the claims in the Underlying Actions.

94.     Upon Smith & Co.'s tender of the Underlying Actions, Mt. Hawley has agreed to defend Smith & Co., under a full reservation of rights. Among the rights explicitly reserved, Mt. Hawley advised Smith & Co.: "Mt Hawley expressly reserves the right to seek reimbursement from you for any indemnity or expense paid, including defense costs, incurred in connection with any uncovered or excluded claims if it is determined that we had no obligation to pay those amounts. Where applicable, this also includes the right to partial reimbursement for indemnity or expense paid which can be specifically allocated to individual claims within a lawsuit that are

20

ultimately determined to be uncovered or excluded."

95.     Under common law theories of quasi-contract and/or unjust enrichment, Smith & Co. has received a contract benefit to which it was not entitled under the terms of the Policy. Mt. Hawley has reserved its right to seek recoupment of that benefit.

96.     Mt. Hawley has suffered damages in an amount to be proven at trial, reflecting the total amount it has expended and will expend on the defense or indemnity for uncovered claims.

**PRAYER FOR RELIEF**

**WHEREFORE**, Mt. Hawley Insurance Company respectfully prays for relief as follows:

a)     On its First Claim for Relief, for a Declaratory Judgment that Mt. Hawley has no duty to defend Smith & Co. against the *Laurel Creek* Action, under the terms of its Policy;

b)     On its Second Claim for Relief, for a Declaratory Judgment that Mt. Hawley has no duty to indemnify Smith & Co. for the *Laurel Creek* Action, under the terms of the Policy;

c)     On its Third Claim for Relief, for a Declaratory Judgment that Mt. Hawley has no duty to defend Smith & Co. against the *Winkles* Action, under the terms of its Policy;

d)     On its Fourth Claim for Relief, for a Declaratory Judgment that Mt. Hawley has no duty to indemnify Smith & Co. for the *Winkles* Action, under the terms of the Policy;

e)     On its Fifth Claim for Relief, for a Declaratory Judgment that Mt. Hawley has no duty to defend Smith & Co. against the *Consolidated* Action, under the terms of its Policy;

f)     On its Sixth Claim for Relief, for a Declaratory Judgment that Mt. Hawley has no duty to indemnify Smith & Co. for the *Consolidated* Action, under the terms of the Policy;

g)     On its Seventh Claim for Relief, for monetary damages in an amount to be proven at trial, plus prejudgment interest thereon at the legal rate;

h)     For costs of suit; and

i)     For such other and further relief as the Court may deem just and proper.

21

Case 1:23-cv-10809-AT   Document 1-2   Filed 12/12/23   Page 22 of 22

Dated: New York, New York.
November 3, 2023

**FORD MARRIN ESPOSITO WITMEYER & GLESER, L.L.P.**

By: _/s/ *Joseph D'Ambrosio*___

Joseph D'Ambrosio
John A. Mattoon

88 Pine Street, 16th Floor
New York, New York 1005-1875
Tel.: (212) 269-4900
jdambrosio@fordmarrin.com
jmattoon@fordmarrin.com

-and-

**PROUGH LAW, APC**

Michael D. Prough, Esq. (*pro hac vice to be filed*)
Yas-Banoo Omidi, Esq. (*pro hac vice to be filed*)

1550 Parkside Drive, Suite 200
Walnut Creek, CA 94596
mdp@proughlaw.com
yo@proughlaw.com
Telephone: (925) 433-5894

*Attorneys for Plaintiff*
*Mt. Hawley Insurance Company*

22